IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID K. BINFORD, ID # 16418-008, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:06-CV-0605-B (BH) |
| | ) | ECF |
| DAVID BERKEBILE, Warden, | ) | Referred to U.S. Magistrate Judge |
| Respondent. | ) | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

I. BACKGROUND

A. Nature of the Case

Petitioner, a federal prisoner incarcerated in a federal prison in Seagoville, Texas, (FCI Seagoville), filed the instant action pursuant to 28 U.S.C. § 2241 to challenge the manner in which he is serving his federal sentence and the calculation of credit to his federal sentence by the Bureau of Prisons (BOP). Petitioner named the Warden of FCI Seagoville, Dan Joslin, as respondent. Because David Berkebile has replaced Dan Joslin as Warden at that facility, the Court substitutes him as respondent. *See* Fed. R. Civ. P. 25(d)(1).

B. Factual and Procedural History

The factual and procedural history for this case is derived from the filings in this case as well as those in *United States v. Binford*, No. CR-95-159-R (W.D. Okla.) and *Binford v. United States*, 436

F.3d 1252 (10th Cir. 2006).[1] While petitioner was in the custody of Oklahoma state authorities on charges of kidnaping and being a felon in possession of a firearm, the district court issued a complaint against him asserting counterfeit check charges. *Binford v. United States*, 436 F.3d 1252, 1253 (10th Cir. 2006) (setting forth factual background based on information before the court relative to a prior federal action commenced by petitioner).[2] On October 17, 1995, the United States Attorney for the Western District of Oklahoma sought a writ of habeas corpus ad prosequendum to obtain custody of petitioner for an October 18, 1995 hearing in federal court. *See United States v. Binford*, No. 5:95-CR-00159-R (W.D. Okla.) (doc. 2 and copy attached to doc. 134 as Attachment 1). A United States magistrate judge ordered that such writ issue, and the United States Marshal took custody of petitioner from state authorities on October 18, 1995. *See id.* On October 18, 1995, the district court ordered issued an order of temporary detention pending the outcome of the state charges. *Binford*, 436 F.3d at 1253; *accord Binford*, No. 5:95-CR-00159-R (W.D. Okla.) (order of temporary detention, doc. 12). That same day, the United States Marshal returned petitioner to the Oklahoma County Jail. *See Binford*, No. 5:95-CR-00159-R (W.D. Okla.) (doc. 2 and copy attached to doc. 134 as Attachment 1).

On April 1, 1996, the United States Attorney for the Western District of Oklahoma sought a second writ of habeas corpus ad prosequendum to obtain custody of petitioner for an April 3, 1996

---

[1] Courts may take judicial notice of their "own files and records, as well as facts which are a matter of public record." *See* 436 F.3d at 1256 n.7

[2] Petitioner argues that he was arrested on both state and federal charges, that the federal proceedings occurred first, and that he was under the primary jurisdiction of the United States from the outset of his criminal proceedings. As discussed in more detail later, petitioner unsuccessfully litigated this issue in an Oklahoma federal district court and on appeal in the Tenth Circuit Court of Appeals. The record supports the facts as found in petitioner's prior action.

hearing in federal court, and a United States magistrate judge ordered that such writ issue.[3] *See id.* (doc. 105 and copy attached to doc. 134 as Attachment 2). On April 3, 1996, the Oklahoma federal court entered judgment and sentenced petitioner to sixty-three months imprisonment for uttering and possessing counterfeit checks and sixty months imprisonment for conspiring to utter and possess such checks. *See id.* (doc. 109). The federal sentences were ordered to run concurrently. *Id.* Petitioner was erroneously delivered to a federal correctional institution (FCI El Reno) for confinement instead of being returned to state custody on April 23, 1996. *See Binford*, 436 F.3d at 1253; *United States v. Binford*, No. 5:95-CR-00159-R (W.D. Okla.) (Attachment 7 to doc. 134). He remained confined in federal custody until he was returned to the State of Oklahoma on May 13, 1996. *See Binford*, 436 F.3d at 1253; *United States v. Binford*, No. 5:95-CR-00159-R (W.D. Okla.) (Attachment 7 to doc. 134).

On November 26, 1996, petitioner was sentenced in state court to concurrent twenty-year sentences for kidnaping and being a felon in possession of a firearm. *See Binford*, 436 F.3d at 1253-54.

On December 9, 1996, the district court entered an amended judgment and sentence wherein it specifically ordered the state sentences to be served "consecutively to Federal sentence currently serving." (*See* Ex. J attached to Pet. § 2241 Writ of Habeas Corpus (Pet.).)

On December 29, 2004, the Western District of Oklahoma received a pleading from petitioner titled, "Petition under 28 U.S.C. § 2255 for a Writ of Habeas Corpus by a Person in State

---

[3] In his prior federal action, petitioner urged the Tenth Circuit to take judicial notice that the April 1996 writ of habeas corpus ad prosequendum was returned unexecuted by the State of Oklahoma. *See* Binford, 436 F.3d at 1256. Like the Tenth Circuit, this Court finds that "the unexecuted return of the writ is inconsequential" in light of the October 1995 writ of habeas corpus ad prosequendum and order of temporary detention. *Id.*

Custody". *United States v. Binford*, No. 5:95-CR-00159-R (W.D. Okla.) (doc. 131). In his sole ground for relief, petitioner claimed that he "was denied Federal Credit for time served since April 3, 1996, the date his Federal Sentence actually commenced." *Id.* The court initially construed the filing as a motion for modification of sentence filed pursuant to 18 U.S.C. § 3582(c), and ordered the government to respond to the § 3582(c) motion. *Id.* (doc. 133). Once the court determined that the circumstances set forth in § 3582(c) were not present, it concluded that it lacked jurisdiction to consider the matter under that statute. *Id.* (doc. 135). Without notice to either party, it thus construed the filing as a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 in which petitioner challenged the execution of his sentence because the BOP had denied his request for concurrent nunc pro tunc designation of his federal sentence which would have permitted his federal sentences to run concurrently with his state sentences. *Id.* By order dated February 1, 2005, the federal sentencing court informed petitioner that it did not order his federal sentences to run concurrently to his state sentences. *Id.* In the same order, the district court held that petitioner's federal sentences did not commence on April 3, 1996, when imposed, or April 23, 1996, when petitioner was mistakenly delivered to a federal correctional center. *Id.* The court thus denied the § 2241 petition. *Id.*

Petitioner remained in state custody until he was returned to federal custody on August 11, 2005. (*See* Ex. I attached to Pet.)

On February 7, 2006, the Tenth Circuit Court of Appeals affirmed the denial of petitioner's prior § 2241 action. *See Binford*, 436 F.3d at 1254-56.

**C. Substantive Issues**

In April 2006, petitioner filed the instant action alleging that the record clearly establishes

that (1) he was originally in federal, not state custody; (2) by the unambiguous language of 18 U.S.C. § 3585(a) his federal sentence commenced on April 23, 1996, but respondent has calculated his federal sentence as commencing on August 11, 2005; and (3) his federal sentence was interrupted due to no fault of his when he was sent to a state prison in May 1996. Petitioner seeks credit to his federal sentence for the period of time from April 23, 1996, through its purported expiration sixty-three months later. He recognizes that the Tenth Circuit has ruled against him in his prior action, but argues that both the federal district court and the Tenth Circuit Court of Appeals lacked jurisdiction to hear his claim under § 2241.

On June 27, 2006, the government filed an answer to the instant petition wherein it concedes that federal authorities mistakenly delivered petitioner to a federal correctional facility on April 23, 1996, although he should have been returned to state custody, and that he was so returned on May 13, 1996. It contends that petitioner began serving his federal sentence on August 11, 2005, and that his current projected release date is January 1, 2010, based upon projected good conduct time and twenty-five days of presentence credit received after the instant action was filed. The presentence credit fully accounts for the time petitioner served at FCI El Reno in 1996 prior to his return to state custody. Respondent argues that the Court should dismiss the instant petition because (1) petitioner has not fully exhausted his administrative remedies; (2) the petition constitutes an abuse of the writ as a successive § 2241 petition; (3) petitioner's federal sentence has not run continuously since April 1996 because it did not commence until August 2005; and (4) petitioner is entitled to no credit against his federal sentence for time spent in state custody due to *Free v. Miles*, 333 F.3d 550 (5th Cir. 2003) (per curium).

In his reply brief, petitioner adamantly argues that he was originally within the primary

jurisdiction of the United States and that it was the State of Oklahoma who "borrowed" him pursuant to a writ of habeas corpus ad prosequendum. He further argues that, regardless of the original primary jurisdiction issue, his federal sentence commenced on April 23, 1996, when he was transferred to FCI El Reno. With respect to the argument that he has not exhausted his administrative remedies, he argues that he exhausted such remedies before commencing his prior federal action in Oklahoma. With respect to the argument that he has abused the writ process by filing the instant action, he argues that he filed the instant action in good faith and that "this is the first time the merits of the claim has <u>properly</u> been before ANY court." He argues that *Free* is factually distinguishable and not controlling in this case.[4]

## II. EXHAUSTION

Respondent argues that petitioner has failed to exhaust his administrative remedies. In his reply brief, petitioner indicates that he exhausted available administrative remedies prior to filing his prior federal action. With his motion to take judicial notice, he provides documentation which shows his efforts to exhaust the administrative remedies available in FCI Seagoville.

Under federal case law, it is well-established that petitioners seeking relief under 28 U.S.C. § 2241 generally must exhaust their administrative remedies prior to presenting their claims in federal court.[5] *See Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (addressing exhaustion in context

---

[4] Following his reply brief, petitioner filed a "Request for Cease and Desist Order; Motion to Hold Administrative Remedies Unavailable" and a "Motion to Take Judicial Notice" that the Court has denied in a contemporaneous order. Although the Court has denied the motion to take judicial notice, it will consider the exhibits attached to that motion when it considers whether petitioner has exhausted his administrative remedies.

[5] As petitioner points out, petitions under 28 U.S.C. § 2241 are not subject to the statutory requirement of exhaustion of remedies applicable to civil actions in which a prisoner challenges the conditions of his or her confinement, *i.e.*, 42 U.S.C. § 1997e. That fact, however, has no bearing on the exhaustion requirements for § 2241, which arise from federal case law rather than a statute.

6

of a § 2241 challenge by a federal prisoner to a parole decision). Federal prisoners who present a claim under § 2241 should exhaust the remedies provided by the BOP. *See, e.g.*, *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (time credit issue).

Although prisoners generally must exhaust their administrative remedies prior to filing a § 2241 action, exhaustion of such remedies is not a jurisdictional requirement. *See Hager v. United States Atty. Gen.*, No. 3:04-CV-40-M, 2004 WL 691578, at *1 (N.D. Tex. Mar. 26, 2004), *accepted by* unpub. order (N.D. Tex. Apr. 14, 2004). "Non-jurisdictional exhaustion serves three functions: 'giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review[.]'" *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). "Unlike jurisdictional exhaustion requirements, which the Court may not excuse, a . . . failure to fulfill a non-jurisdictional exhaustion requirement need not be fatal to [an action]." *Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d 110, 123 (D.D.C. 2006) (citation omitted). In the habeas context, moreover, the Supreme Court has indicated that the district courts have discretion to stay a habeas action so that the petitioner may fully exhaust state remedies. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005); *Rhines v. Weber*, 544 U.S. 269, 278-79 (2005). The Supreme Court has thus at least implicitly agreed that subsequently exhausting available remedies cures an initial lack of exhaustion in the habeas context.

In this instance, petitioner argues that he exhausted available administrative remedies prior to filing this action and that he has exhausted the available administrative remedies at FCI Seagoville while this action remained pending. Because petitioner undoubtedly exhausted all administrative remedies as of November 28, 2006, and because the Court finds that such exhaustion would cure any failure to exhaust prior to filing this habeas action, the Court need not determine whether

7

petitioner had exhausted available administrative remedies prior to commencing this action. To the extent petitioner had not exhausted all available remedies prior to filing this action, his subsequent exhaustion cures that failure.

### III. ABUSE OF WRIT

Respondent also argues that the Court should dismiss the instant action as a successive petition that constitutes an abuse of the writ. Petitioner acknowledges that the Tenth Circuit has ruled against him on his time credit issue but argues that neither the federal district court nor the Tenth Circuit Court of Appeals had jurisdiction to construe his prior action as a petition filed pursuant to 28 U.S.C. § 2241. In his reply brief, he argues that he filed the instant action in good faith so that the merits of his claim are properly presented to the federal courts.

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Within 28 U.S.C. § 2244 as amended by AEDPA, Congress specifically limited the filing of successive petitions for writ of habeas corpus under § 2254. Within § 2255 and by reference to § 2244, Congress also specifically limited the filing of successive motions to vacate. Although these specific limitations "do not literally apply" to habeas petitions properly filed pursuant to § 2241, *see Ortloff v. Fleming*, 88 Fed. App'x 715, 716 (5th Cir. 2004) (citing *Zayas v. INS*, 311 F.3d 247, 256-57 (3d Cir. 2002)), the Fifth Circuit has held that the prior version of § 2244(a) bars successive petitions filed under § 2241 that are based on the same claim, *see United States v. Tubwell*, 37 F.3d 175, 177-78 (5th Cir. 1994). In view of the similarities between the prior version of § 2244(a) and its

current version,[6] the Fifth Circuit has applied the current version to bar successive habeas petitions as an abuse of the writ. *See Jennings v. Menifee*, 214 Fed. App'x 406, 407 (5th Cir. 2007) (per curiam), *cert. denied*, ___ S. Ct. ___, No. 06-10629, 2007 WL 1115777 (May 14, 2007); *Ortloff*, 88 Fed. App'x at 716; *Smith v. Ashcroft*, 275 F.3d 1083, 2001 WL 1468760, at *1 (5th Cir. Oct. 31, 2001) (per curiam); *Turner v. United States Parole Comm'n*, 268 F.3d 1064, 2001 WL 877771, at *1 (5th Cir. July 24, 2001) (per curiam).

The Fifth Circuit has clearly indicated that the decision to dismiss a successive § 2241 petition as an abuse of the writ under § 2244(a) lies within the sound discretion of the district courts and is not mandated by the statute. *See Davidson v. United States Dep't of Justice*, 239 F.3d 366, 2000 WL 1741633, at *1 (5th Cir. Nov. 15, 2000) (Table, Text on Westlaw) (characterizing such a dismissal as "discretionary" and addressing an appeal of such a dismissal under an abuse of discretion standard); *accord Sanders v. United States*, 373 U.S. 1, 12 (1963) (recognizing that a predecessor to current statute did "not enact a rigid rule", but instead permits rather than compels a judge "to decline to entertain" a successive application); *McGary v. Scott*, 27 F.3d 181, 183 (5th Cir. 1994) (recognizing that the "decision to dismiss a second or subsequent federal habeas petition for abuse of the writ lies within its sound discretion", but discussing Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts as it existed prior to its amendment in December 2004); *Sinclair v. Blackburn*, 599 F.2d 673, 675 (5th Cir. 1979) (relying on *Sanders*, § 2244(b) as it then existed, and Rule 9(b) as it then existed).

---

[6] The current version of 28 U.S.C. § 2244(a) provides:
> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

9

In *McCleskey v. Zant*, 499 U.S. 467 (1991), the Supreme Court enunciated the current controlling standard for determining whether a particular petition constitutes an abuse of the writ. *Ortloff v. Fleming*, No. 4:02-CV-749-Y, 2003 WL 21246098, at *3 (N.D. Tex. Apr. 24, 2003), *aff'd*, 88 Fed. App'x 715 (5th Cir. 2004).

> When a prisoner files a second or subsequent application, the government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*McCleskey*, 499 U.S. at 494-95.

Petitioner in this case essentially argues that his current § 2241 petition should not be considered successive because the Oklahoma federal courts lacked jurisdiction to construe his purported § 2255 motion as a petition filed pursuant to § 2241.[7] In general, however, courts have jurisdiction to "ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category." *Castro v. United States*, 540 U.S. 375, 381 (2003), *accord Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1132 n.1 (5th Cir. 1987) (holding that federal courts may construe and re-characterize a *pro se* prisoner action "according to the essence of the prisoner's claims, regardless of the label that the prisoner places on his complaint"); *United States v. Santora*,

---

[7] The Court notes that petitioner's current position is contrary to the position he took on appeal in the Tenth Circuit where he "concede[d] the district court correctly construed his petition under 28 U.S.C. § 2241." *See Binford v. United States*, 436 F.3d 1252, 1253 n.2 (10th Cir. 2006).

10

711 F.2d 41, 42 & n.1 (5th Cir. 1983). Among other things, such recharacterization is proper "to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro*, 540 U.S. at 381-82.

Petitioner here filed his purported § 2255 motion with the convicting federal court while he was a state prisoner in custody under a judgment and sentence of a state court in Oklahoma. As the convicting court, the Western District of Oklahoma certainly had jurisdiction to construe petitioner's *pro se* federal filing as a § 2241 petition. *See* 28 U.S.C. § 2241(d) (establishing that the district of conviction and district of incarceration have concurrent jurisdiction to entertain habeas petitions filed by state prisoners in custody under a judgment and sentence of a state court in a State which has multiple federal judicial districts). That petitioner was in state custody under a state sentence of incarceration when he filed his previous federal action posed no obstacle to filing a federal petition for time credit under § 2241. *Cf. Simmons v. United States*, 437 F.2d 156, 159 (5th Cir. 1971) (holding that § 2255 "is available to a prisoner in state custody attacking a federal sentence scheduled to be served in the future" and that there is "no reason to restrict section 2255 to prisoners actually in federal custody"). Petitioner's argument that the federal courts in Oklahoma lacked jurisdiction to construe his prior filing as a § 2241 petition is unavailing.

Notwithstanding the jurisdiction of the federal courts in Oklahoma to construe the prior filing as a § 2241 petition, a separate and distinct question arises as to whether this Court should count the prior action for purposes of abuse of the writ. The record reveals that the Oklahoma federal district court recharacterized petitioner's pro se filing as a petition filed pursuant to § 2241 without providing him notice. In *Castro*, the Supreme Court found that limits exist on the authority to recharacterize a *pro se* filing. *See* 540 U.S. at 383. In particular,

11

> when a court recharacterizes a *pro se* litigant's motion as a first § 2255 motion . . . the district court must notify the *pro se* litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on "second or successive" motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has. If the court fails to do so, the motion cannot be considered to have become a § 2255 motion for purposes of applying to later motions the law's "second or successive" restrictions.

*Id.* While recognizing that *Castro* specifically dealt with recharacterizing a pro se filing as a first motion to vacate under 28 U.S.C. § 2255, one appellate court has held that the *Castro* notice requirements also apply when recharacterizing a filing as a habeas petition under 28 U.S.C. § 2241. *See Simon v. United States*, 359 F.3d 139, 140, 144-45 (2d Cir. 2004). *Simon* found that the underlying rationale for the *Castro* notice requirements appeared equally applicable in the context of an abuse-of-the-writ analysis for a § 2241 petition. *See id.* at 141-45. *Simon* also recognized a potential argument that a petitioner may waive the notice requirements or otherwise consent to a sua sponte conversion, but did not address such argument because the government had not pursued it in its briefing. *Id.* at 145.

In light of the discretionary nature of a dismissal of a petition as an abuse of the writ, the Court need not definitively determine herein whether the *Castro* notice requirements apply in the context of a recharacterized § 2241 petition, whether such notice requirements may be waived, and whether petitioner waived them.[8] To the extent the instant action may constitute an abuse of the writ, the Court exercises its discretion and declines to dismiss the petition as a successive petition.

### IV. PRIMARY JURISDICTION

Petitioner vigorously argues that he was originally within the primary jurisdiction of the

---

[8] As previously noted, petitioner took the position in the Tenth Circuit that the district court properly construed his filing as a petition filed pursuant to 28 U.S.C. § 2241.

12

United States, and that it was the State of Oklahoma who "borrowed" him pursuant to a writ of habeas corpus ad prosequendum. The Court thus considers the issue of primary jurisdiction first.

"When a person has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns." *Yusufu v. Ashcroft*, 250 F.3d 741, No. 00-10918, 2001 WL 274491, at *1 (5th Cir. Feb. 15, 2001).

> The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose.

*Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922). "Normally, the sovereign which firsts arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration." *United States v. Warren,* 610 F.2d 680, 684-85 (9th Cir. 1980). When "a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary." *Causey v. Civiletti*, 621 F.2d 691, 693 (5th Cir. 1980). It is well-settled that "[a] writ of habeas corpus ad prosequendum is only a 'loan' of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction." *Id.*

Prior to the filing of this case, the Tenth Circuit Court of Appeals found that the State of Oklahoma had primary jurisdiction over petitioner and never relinquished its jurisdiction, the federal government simply borrowed him to conduct its proceedings, and the federal district court ordered petitioner temporarily detained in federal custody pending resolution of petitioner's state charges. *See Binford v. United States*, 436 F.3d 1252, 1253-56 (10th Cir. 2006). A review of the record fully supports these findings.

In support of his argument that the federal government had primary jurisdiction over him

and that the State of Oklahoma "borrowed" him from federal authorities, petitioner provides several state court documents and "booking sheets" from the Oklahoma County Jail.  The court documents show that on January 24, 1996, April 9, 1996, and May 13, 1996, the state district court issued writs of habeas corpus ad prosequendum to obtain petitioner for state proceedings, and that the amended judgment entered by the district court on December 9, 1996, indicates that petitioner was "currently serving" his federal sentence.  (*See* Exs. D, E, and F attached to Pet.).  Nevertheless, on October 18, 1995, the federal court entered a detention order that placed petitioner in temporary federal custody pending resolution of petitioner's state charges and petitioner was returned to the Oklahoma County Jail.  The references to petitioner as "a federal prisoner" in the first two state writs of habeas corpus ad prosequendum may reasonably be construed as merely reflecting that temporary status.  Such reference in the third state writ of habeas corpus ad prosequendum may reflect that temporary status or the fact that petitioner was sent to FCI El Reno – in either case, the writ does not reflect that the federal government had primary jurisdiction over petitioner.  The state amended judgment likewise does not dictate a finding that the federal government had primary jurisdiction over petitioner. Additionally, the booking sheets do not establish which sovereign had primary jurisdiction over petitioner.

For these reasons, the Court rejects petitioner's argument that he was in the primary jurisdiction of the federal government when the federal criminal proceedings commenced against him. Consistent with the finding of the Tenth Circuit, the Court finds that petitioner was originally in the primary jurisdiction of the State of Oklahoma.

## V. SENTENCING CALCULATION

"Title 18 U.S.C. § 3585 determines when a federal sentence of imprisonment commences and whether credit against that sentence must be granted for time spent in 'official detention' before the sentence began." *Reno v. Koray*, 515 U.S. 50, 55 (1995). The statute provides:

> **(a) Commencement of sentence.**–A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily at, the official detention facility at which the sentence is to be served.
>
> **(b) Credit for prior custody.**–A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
> > **(1)** as a result of the offense for which the sentence was imposed; or
> >
> > **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

This statute covers two distinct sentencing situations. Subsection (a) determines the time at which a defendant's sentence commences for purposes of executing his or her federal sentence. Subsection (b), in contrast, determines whether a defendant will receive credit toward his or her federal sentence for time spent in "official detention" *prior to* the time the federal sentence "commences" within the meaning of subsection (a). Subsection (b) makes clear "that credit is awarded only for *pre-sentence* restraints on liberty." *Koray*, 515 U.S. at 56.

In *Free v. Miles*, 333 F.3d 550 (5th Cir. 2003), the Fifth Circuit Court of Appeals recognized a common law rule that, once a federal sentence commences, it must run continuously without interruption unless an interruption is caused by some fault of the prisoner. *See* 333 F.3d at 553-54. Despite such recognition, however, the Fifth Circuit declined to apply such rule in the case of an

15

inmate who was serving consecutive state and federal sentences, was mistakenly placed in federal custody, returned to state custody to serve the remainder of his state sentence, and then returned to federal custody for service of his federal sentence. *See id.* at 554-55. It held that

> [t]he rule against piecemeal incarceration precludes the government from artificially extending the expiration date of a prison sentence; the rule does not, however, justify or mandate that a prisoner receive a "get out of jail early" card any time that such a minuet occurs, even when the prisoner is not at fault.

*Id.* at 555. The facts in *Free* were very similar to those in this case:

> (1) A state prisoner on "loan" to federal authorities [was] convicted and sentenced for a federal crime; (2) the prisoner [began] to serve his federal sentence through a mistake of the federal authorities and no fault of his own; (3) after serving less than his full federal sentence in federal custody, the prisoner [was] returned to state custody to complete his state sentence; and (4) after completion of his state sentence, the prisoner [was] returned to federal custody to complete his federal sentence.

*See* 333 F.3d at 553 (footnote omitted).

In this case, petitioner was likewise mistakenly placed in federal custody, returned to state custody to serve the remainder of his state sentence, and then returned to federal custody for service of his federal sentence. Petitioner argues, however, that *Free* is distinguishable on its facts and that he is entitled to credit to his federal sentence for time spent in state custody after May 13, 1996, through the date that his federal sentence purportedly expired approximately sixty-three months later.[9] Contrary to his arguments, he was on loan to federal authorities pursuant to a writ of habeas corpus ad prosequendum. *See United States v. Binford*, No. 5:95-CR-00159-R (W.D. Okla.) (docs. 2 and 105, copies attached to doc. 134 as Attachments 1 and 2); *accord Binford v. United States*, 436

---

[9] Subsequent to the filing of this action, the government credited petitioner's federal sentence for time spent in FCI El Reno between April 23, 1996, and May 13, 1996. The instant petition is thus moot to the extent petitioner seeks such credit to his federal sentence.

F.3d 1252, 1253-56 (10th Cir. 2006) (finding that state authorities released Binford into federal custody pursuant to such writ). *Free* thus constitutes binding, indistinguishable precedent, and petitioner is entitled to no credit toward his federal sentence for time spent in state custody. *See* 333 F.3d at 552-55.

Petitioner also contends that his federal sentence commenced on April 23, 1996, when he was transferred to FCI El Reno, and that he is entitled to credit toward his federal sentence from that point onward. Petitioner's argument appears to be supported by *Free*, but the issue was not directly before the court.[10] *See* 333 F.3d at 552-55. On the other hand, the Tenth Circuit's opinion in petitioner's prior federal action supports the government's position that petitioner's federal sentence did not commence until August 2005, when petitioner finished serving his state sentence. *See Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006) (finding that "Binford's federal sentence never began until he was finally received into federal custody for the purpose of serving his federal sentence, after completing his state sentence").

Because the government has credited petitioner's federal sentence for the time he spent in FCI El Reno, the facts of this case present no reason to definitively resolve the apparent conflict

---

[10] In *Free*, the Fifth Circuit did not directly address when Free's federal sentence commenced because the district court had decided the issue and no one appealed that aspect of the district court's ruling. *See* 333 F.3d at 551-55. The court, nevertheless, specifically recognized that "Free's claim for time-served credit only makes sense in light of his successful petition on the issue of the proper starting date of his federal sentence." *Id.* at 552. It indicated no error regarding the District Court's determination of the commencement date, but instead indicated that Free had "rightfully and successfully challenged" the denial of the six months he spent in federal custody before being returned to state custody. *Id.* at 555. While the Circuit clearly had no disagreement with the District Court's determination regarding the commencement date of Free's federal sentence, and at least arguably implicitly accepted the proposition that Free's federal sentence commenced when he was first received into federal custody, *see id.* at 552-55, the facts of this case do not require a definitive determination of the precedential effect of *Free* regarding the commencement date of federal sentence.

17

between *Free* and *Binford* regarding the commencement date of petitioner's federal sentence.[11]  If petitioner's federal sentence commenced on April 23, 1996, as he contends, *Free* supports credit to his federal sentence for time served in federal custody but not for time served in state custody.  As the government has already credited petitioner's federal sentence for the time spent in FCI El Reno, petitioner is entitled to no additional credit to his federal sentence.  If, on the other hand, petitioner's federal sentence did not commence until August 2005, as the government contends, he is only entitled to credit to his federal sentence for such time that has not been credited against another sentence.  *See* 18 U.S.C. § 3585(b).  Because the State of Oklahoma has credited petitioner's state sentence with the time spent in state custody and because the government has credited petitioner's federal sentence for the time spent in FCI El Reno that was not credited to petitioner's state sentence, petitioner is entitled to no additional credit to his federal sentence.

For all of these reasons, petitioner is entitled to no further credit to his federal sentence for any time between April 23, 1996, and August 11, 2005.

## VI.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DEEM MOOT** the instant petition filed pursuant to 28 U.S.C. § 2241 to the extent petitioner seeks credit to his federal sentence for time spent in federal custody between April 23, 1996, and May 13, 1996.  The Court should otherwise **DENY** the instant petition.

---

[11] Of course, if the facts required resolution of the conflict, this Court is bound by *Free* to the extent that case addresses the issue.

18

SIGNED this 22nd day of June, 2007.

                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

                                                  IRMA CARRILLO RAMIREZ
                                                  UNITED STATES MAGISTRATE JUDGE